**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF WISCONSIN**

In re:   THEODORE J. POLCZYNSKI and      Chapter 13 Bankruptcy
         DIANE K. POLCZYNSKI

Debtors.                                 Case No.: 18-31561 GMH

VLAD MALEVANY
18800 128TH STREET
BRISTOL, WI 53104
                                    Adversary No.:

         Plaintiff,

AMY MALEVANY
5310 GEORGE COURT, APT B
GURNEE, IL 60031,

         Plaintiff,

vs.

THEODORE J. POLCZYNSKI
6917 HIGHWAY 83
HARTLAND, WI 53029

         Defendant.

**COMPLAINT TO DETERMINE NON-DISCHARGEABILITY OF DEBT UNDER 11
U.S.C. §523 (a)(4) FALSE PRETENSES, FALSE REPRESENTATION, ACTUAL
FRAUD**

        NOW COME the Plaintiffs, Vlad Malevany and Amy Malevany,

(the "Malevanys), by their attorneys Rizzo & Diersen, S.C., by

Attorney Piermario Bertolotto, and for a Complaint against the

Defendant-Debtor, Theodore J. Polczynski, (the "Defendant"), and

hereby allege upon information and belief as follows:

        1.   The Court has jurisdiction over this case under 28

1

U.S.C. Stat. Sections 1334(b) and 157(b)(1), and 11 U.S.C. Stat. Section 727; and, this adversary pleading is a core proceeding under 28 U.S.C. Stat. Section 157(b)(2)(J).

<u>**GENERAL FACTS AND ALLEGATIONS**</u>

2. Vlad Malevany is and adult residing at 18800 128th Street, Bristol, Wisconsin, 53104; and Amy Malevany is an adult residing at 5310 George Court, Apartment B, in Gurnee, Illinois, 60031.

3. The Defendant is an adult, whose address is, to wit, 6917 Highway 83, Hartland, WI 53029.

4. The Defendant is the owner of a single member Wisconsin Limited Liability Company, Built by Ted, LLC, (the "LLC"). The Defendant is the registered agent of the LLC, the Wisconsin Domestic Limited Liability Company is authorized to do business in Wisconsin with a principal office located at 6917 Highway 83, Hartland, WI 53029.

5. On or about March 6, 2016, the Malevanys, as buyers, and the LLC, as builder, entered into a Building Construction Contract, (the "Contract"), for the construction of a residence on Lot 9 of Woodhaven Meadows Subdivision in Kenosha, Wisconsin, (the "Property"). The Contract price was $306,035.00. A true and correct copy of the Contract that was signed is attached as Exhibit A and incorporated by reference herein.

6. Pursuant to the Payment and Escrow provisions of the

2

Contract, and as requested by the Defendant, the Malevanys proceeded to pay the Defendant two (2) deposit payments of $15,000.00, for a total of $30,000.00. The first deposit of $15,000.00 was made on March 7, 2016, and the second deposit of $15,000.00 was made before March 28, 2016.

7.   On or about April 13, 2016, the Malevanys and the Defendant, operating to wit under the sole proprietorship name of Handyman Ted, entered into a tree removal agreement, (the "Tree Contract"), for the Defendant to remove from the Property trees, bury large stumps in the Property out of the utility area, remove thin brush, chipping the brush and scattering on the Property. The Tree Contract price was $3,800.00. A true and correct copy of the Tree Contract that was signed is attached as Exhibit B and incorporated by reference herein.

8.   The total amount paid to date by the Malevanys to the Defendant to date is $33,800.00.

9.   As a term of the Contract, as stated in the Construction section of the Contract, the "...building shall be completed in a good workmanlike manner in quality equal to the standards of the industry found in the Metropolitan Builders Association Construction Industry Quality Standards manual within One Hundred Eighty (180) working days after the date of commencement."

10.  As a term of the Contract, as stated in the Disputes

3

section of the Contract, disputes arising relative to the Contract, depending on the type of dispute as set forth in that Disputes section, are to be resolved by mediation or arbitration pursuant to the Metropolitan Builders Association of Greater Milwaukee rules for mediation and arbitration.

11. On July 28, 2016, the Malevanys, through counsel, sent a letter to the LLC, stating that despite the Malevany's efforts, deposits, and good faith, the Defendant has failed: (1) to commence excavation on the Property as agreed to in the Contract; (2) to procure the necessary approvals from the architectural board to proceed; (3) has delayed the construction of the home on the Property by not complying with adjacent projects to the Property that directly affect the performance under the Contract; and (4) failed to resolve issues that preclude the commencement of the construction to begin as agreed to under the Contract.

12. The Defendant failed to respond to the letter dated July 28, 2016, sent on behalf of the Malevanys.

13. On August 18, 2016, the Malevanys, again through counsel, sent a second letter to the Defendant demanding a cancellation of the contract and a full refund due to Defendant's breach and blatant disregard to the Contract provisions.

14. The Defendant failed to respond to the letter dated August 18, 2016, sent on behalf of the Malevanys.

15. On September 13, 2016, the Malevanys, per the

4

Disputes section of the Contract, filed with the Milwaukee Builder's Association of Greater Milwaukee, (the "MBA"), a formal request for mediation.

16. The Defendant failed to respond to the MBA's letters and failed to participate in the mediation as set forth in the Contract. The Malevanys initiated a lawsuit in Kenosha County Circuit Court on December 15, 2016.

17. After ordered by the Kenosha County Court, the Defendant participated in a mediation conducted on July 19, 2017, at the offices of the MBA. The dispute between the parties was not resolved at mediation. An amended complaint was filed on September 8, 2017, to include a cause of action for theft by contractor for the funds paid by the Malevany's to the Defendant.

18. Despite discovery and multiple demands, the Defendant, to date, has not returned to the Malevanys the $33,800.00, nor has provided an accounting ledger, itemization, receipts, or any type of document evidencing labor, materials, services, and/or plans to supplement that the Defendant is entitled to any portion of the $33,800.00 paid by the Malevanys.

19. The Defendant has misappropriated the Malevanys' $33,800.00.

**CAUSE OF ACTION: THEFT BY CONTRACTOR**

20. The Malevanys restate, reallege, and incorporate by reference herein paragraphs one through 19 above.

5

21. The Defendant received a total of $33,800.00 of payments under the Contracts to his LLC.

22. The Defendant's receipt of the $33,800.00 for labor, materials, and/or services under the Contracts constituted amounts deposited and to be held by the Defendant in a trust fund for the benefit of the Malevanys.

23. The Defendant, personally and as owner of the LLC, has used funds paid to the trust fund by the Malevanys for purposes other than providing labor, materials, and/or services under the Contracts in violation of Wis. Stat. §779.02(5).

24. Despite multiple demands that the trust fund amounts be returned to the Malevanys, the Defendant has failed, on his behalf and the LLC's, to refund the Malevanys and is in violation of Wis. Stat. §943.20(1)(b) theft by contractor statute.

25. Per Wis. Stat. §895.446, the Defendant is liable for $33,800.00, directed and converted from the trust fund, which should have been held for the benefit of the Malevanys and up to three times such amount as exemplary damages together with the actual attorney fees and costs.

26. The Malevanys claim against Defendant is non-dischargeable pursuant to 11 U.S.C. 523(a)(4). The Defendant should be denied a discharge in bankruptcy as to the extent of the Malevanys' claims for any and all amounts collected in trust for the benefit of the Malevanys.

WHEREFORE, the Malevanys request that the Court deny the Defendant's discharge as to the Malevanys' claims set in this Complaint, and grant such further relief as follows:

A.   A monetary judgment in the amount of $33,800.00 and treble damages;

B.   An Order for Non-dischargeability under 11 U.S.C. 523(a)(4) as to the Malevany's claims set forth in this Complaint;

C.   An award of reasonable attorney fees and costs; and

D.   Any additional relief as deemed just and equitable.

Dated this 18th day of March, 2018.

RIZZO & DIERSEN, S.C.
Attorney for the Malevanys


By:   /s/ Piermario Bertolotto
      Piermario Bertolotto
      State Bar No.: 1044687

RIZZO & DIERSEN, S.C.                              7
Attorneys at Law
3505 - 30th Avenue
Kenosha, WI 53144
Tel:   (262)652-5050
Fax:   (262)652-5053   Case 18-31561-gmh   Doc 32   Filed 03/18/19   Page 7 of 25


EXHIBIT

A

# Built by Ted, LLC.

## BUILDING CONSTRUCTION CONTRACT

This Contract made this 6th day of March, 2016, between the undersigned Buyer(s), Vlad and Amy Malevany, hereinafter called the "BUYER", agree to employ the services of **Built by Ted, LLC.,** a Wisconsin Corporation, hereinafter called the "BUILDER": to construct and erect a house upon the land owned by the Buyer, as follows: <u>Legal Description attached as Exhibit "A"</u> at the following described building site: Lot 9 Woodhaven Meadows Subdivision, Kenosha County, Wisconsin, depicted on the **Plans attached as Exhibit "B" and the Specifications attached as Exhibit "C",** which the Buyer has examined and approved, and which are incorporated as part of this contract by reference, on the following terms and conditions for the total contract price shown: $306,035.00

Allowance items are an amount budgeted by Built by Ted, LLC. based on experience, a thorough review of the plans, and consultation with suppliers and subcontractors. Allowance line items are estimates and are often very difficult or impossible to accurately bid without a significant contingency due to inadequate information provided on the plans or due to various elements beyond the Builder's control. For example, architectural plans do not typically contain information describing the specific carpet manufacturer specification and color selection or information describing the specific ceramic tile manufacturer and color. In addition, unusual soil conditions not depicted on the plans can cause the cost of foundation, utility and driveway construction costs to increase. Allowance items provided for in this Contract are subject to adjustment upon completion of the particular work involved. When the final costs for allowance items exceed the total allowance, Buyers shall pay the Builder the difference in cash within 7 days after the date of invoice written in the form of a change authorization from Builder for the additional amount due. Should the actual cost be less than the allowance, Buyer will receive credit for the difference at final closeout prior to occupancy. All allowances will be charged at Builder's cost plus 20% for Builder's markup.

### PAYMENT AND ESCROW
**A deposit of $15,000.00 was tendered on 3-7-2015 by Buyer. The additional sum of $15,000.00 shall be tendered March 28, 2016 on the closing of the construction loan, for a total deposit of $30,000.00. The balance of $276,035.00 shall be paid in draws**

from the proceeds of Buyers' mortgage loan from Johnson Bank. **All draws will be funded through Landmark Title Company. Draws are required every 30 days. This can mean approximately 6-7 draws.** Buyer is responsible for payment of any money wire transfer fees from the bank to the title company (usually $10 and certain lenders). The Buyer shall make or authorize payment to the Builder within Three (3) working days after receipt of each progress payment request provided for above. Builder shall furnish proper waivers of lien to the escrow agent or lender, if required, to the extent of the progress payment authorized. If timely payment is not received, Builder shall be entitled to stop the work, which shall be treated as a delay. The title company inspection service will be the governing party and deciding factor relating to funds being withheld on uncompleted work. Buyer will not interfere with the bank or title company funding of the progress payments due to Builder. Any such interference will be considered a breach. All draws and final payment are subject to a delinquency charge of 1.5% per month or 18% per year if not paid when due. Final payment shall be paid to Builder at completion and prior to occupancy. All deposits shall be held by Built by Ted, LLC. in its bank account until any contingencies provided for in this agreement have been removed. Thereafter, the Builder will apply same to the costs and charges for the project. In any event of the Builder not being able to complete the home, receive final payment or use the home as the intended model, the discount of $17,500.00 that was deducted for the Model Home Package will be added to the final balance due.


## CHANGES AND EXTRAS

No changes from the plans and specifications attached shall be made without written change order, email confirmation or text message by Buyer and Builder setting forth a detailed description of the change, and the associated cost or credit. All change order work shall be paid for prior to performing the work or supplying materials. Any changes or extras may extend the time to complete the construction. The cost of all changes (whether due to overages in allowance items, price changes, material changes, change order work or any other changes) shall be based on Builder's cost plus **20%** for Builder's markup. Any additional costs for any requirements imposed by the municipality or subdivision, or requirements of any public body, municipality or building inspector including, but not limited to, which increases costs not already in this contract, shall not constitute an extra and shall be paid by buyer, and shall not require written approval from Buyer as stated above. Buyer agrees to pay a separate administrative fee surcharge of $75.00 per individual change hereunder occurring after signing of this Contract in addition to Builder's quoted price of the change. All changes will include Builder's markup. Any extras or overages to the contract sum are subject to a delinquency charge of 1.5 % per month or 18% per year if not paid when due and Buyer shall bear all costs of collection including reasonable attorney's fees if not paid by due date. In the event of non-payment, Builder shall be entitled to stop work, which stoppage shall be treated as a delay to which paragraph titled "Work Stoppage or Payment Default" shall apply.


## WORK BY HOMEOWNER

Buyer agrees to perform the labor and/or furnish materials as set forth in the Specifications attached as Exhibit "C", if any, within a reasonable time after notice from the Builder that such work must be performed or materials furnished. Work and/or materials shall be acceptable to the Builder and appropriate inspection authorities, etc. Buyer is responsible for determining that any party other than Builder who performs work and/or supplies material carries worker's compensation insurance to the extent required by law and also liability insurance covering operations at the building site in amount Builder is required to carry under paragraph titled "Insurance" hereof. Buyer agrees to hold Builder harmless from any and all claims, demands, actions, liabilities, losses, and damages to person or property arising out of or related to any act or omission of Buyer or any agent, contractor or subcontractor of Buyer, in or on about the building site in connection with the performance of work or furnishing of materials for the construction of the building. Buyer is responsible for the protections of, and/or repair of damage to any materials or labor supplied by Buyer or Buyer's agent. Buyer or Buyer's subcontractor's work may void the Builder's warranty. Any work performed by the Buyer or Buyer's agent cannot hold up or interfere with work by Builder.

**FINANCING CONTINGENCY**

If financing is required, this offer is contingent upon the Buyer, securing a firm mortgage commitment for at least the sum of **$350,000** over a period of not less than 30 years, interest computed at not more than an average of 7% per annum, plus 1/12th of the yearly taxes by the Buyer, in additions to all other necessary financing costs charged by the mortgagee. Upon execution of said mortgage, which may include a rate adjustment clause and prepayment clause, interest thereon shall be borne by the Buyer, in addition to all other necessary financing costs charged by the Lender, all of which shall be paid as required. If such financing cannot be obtained within thirty (30) days from the date hereof, then either party may rescind this agreement in writing and all moneys paid hereunder, less all of builder's direct out-of-pocket expenses incurred by Built by Ted, LLC. in assisting Buyer in Buyer's attempt to obtain financing or incidental to the performance of Builder's obligations hereunder, shall be refunded to the Buyer. These expense obligations may include, but are not limited to the following, survey, building permits, erosion control, dumpsters, credit report, any required tests, and the cost of plans or specifications prepared for Buyer. Buyer agrees to sign all documents necessary to obtain a mortgage or establish an escrow and to authorize the disbursement of proceeds from same as provided for in paragraph titled "Payment" herein.

**CASH SALE**

~~Buyer and Builder understand and agree that financing is not required and that this transaction shall be a cash sale to Buyer.~~ (Strike this paragraph if it is not applicable.)

**SALE OF EXISTING PROPERTY**
**This contract is not contingent upon the sale of owners other property.**

## ESCROW

~~In the event no financing is required, the parties agree that the total contract price, less the aforementioned down payment shall be deposited with an escrow agent as stated in the paragraph above titled "Payment" naming Builder as escrow proceeds recipient. Buyer shall pay any fees or charges for said escrow and agrees to authorize the disbursement of withdrawals from the escrow as set forth in paragraph titled "Payment" above. Construction shall not commence until Builder receives written verification, satisfactory to Builder, that the escrow has been established.~~

## CLOSING DATE

The construction loan shall be executed and this transaction closed prior to the start of construction at the office of the Buyer's mortgagor, on or about **30 days after signing** or at such other time and place as may be designated in writing by the parties hereto. Time is hereby made of the essence.

## DEFAULT PRIOR TO START OF CONSTRUCTION

In the event Buyer fails to fulfill Buyer's obligations under this Contract, all moneys paid hereunder shall, at the option of the Builder, be applied to the payment of builder's direct out of pocket costs and anticipated lost profits, which are to be determined as 20% of the total price as set forth on page one (1) of this Contract, and other damages as may be proven. Such partial application of funds toward damages shall not limit the remedies of Built by Ted, LLC. to pursue Buyer for specific performance of Buyer's obligations hereunder or to pursue Buyer for actual damages. This Paragraph shall not apply in the event that the Buyer's default is due to the inability to secure financing as set forth herein or as a result of the inability to sell existing property as set forth in Paragraph titled "Sale of Existing Property" above. Buyer understands and agrees that Buyer's attempts to secure financing or sell existing property must be made in good faith and with due diligence.

## FINANCING OR CLOSING DELAY

The total contract price provided for in this Contract shall remain in full force and effect only if the financing referred to above is closed as provided above, time being of the essence. In the event financing is not closed on or before the stated date, Builder reserves the right to revise such price to cover any increased material and labor costs. If such increase is not consented to by Buyer, Builder may, at its option, cancel this Contract and return Buyer's funds, less amounts as provided in the paragraph titled "Financing Contingency". If buyer is unable to secure financing, Builder has the right to help secure financing at other lenders.

## INSURANCE

The Buyer shall, prior to commencement of the work and until full payment is made to Builder, keep the building insured by a Builders Risk Policy Special Form covering all risk coverage against loss or damage by fire, windstorm, and all other hazards, including vandalism, theft and basement collapse, **naming the Builder as additional insured and loss payee** in an amount not less than the full contract price of **$306,035.00** and to deposit with Builder a Certificate of Insurance until all sums due under the contract are paid in full. If the Buyer fails to effect or maintain Insurance above, or to deposit said Certificate of Insurance, Buyer assumes any or all liability, but the Builder may insure his own interest in said building and charge the cost thereof to the Buyer as an extra. The Builder shall maintain Comprehensive General Liability Insurance of not less than $1,000,000 Bodily Injury, $500,000 Property Damage, and Worker's Compensation. Builder shall not be liable for uninsured damages or losses caused by unusually severe weather conditions, storms, lightning, hail, flood, or similar occurrences, damages caused by riot, civil commotion, theft, vandalism, war, fire, or any other conditions or occurrences whether similar to the foregoing or not which are not within the control of the Builder. Any loss in the amount of a deductible or an insurance policy providing coverage against damage to or destruction of any improvements to be constructed hereunder will be paid by Buyer. Builder can give owner a copy of the insurance certificate at the time of Excavation if needed.


## PERMITS AND APPROVALS

Buyer shall cooperate with builder in obtaining all permits and approvals necessary for construction, which must be received from any non-governmental parties, including and without limitation, any homeowners association or subdivision developer. Buyer shall cooperate by tendering timely payment for same, providing information to builder and the like. These permits and approvals must be in the possession of the Builder prior to the start of any construction work. Builder shall use due diligence for obtaining all permits and approvals required for construction, which must be received from any governmental authorities, including septic and zoning permits, building and erosion control permits. Buyer understands and agrees that the Builder must work with third parties as well to obtain these permits and that in order to control costs and proceed with this project in an orderly way, that such permits and approvals must be available to builder in a commercially reasonable and timely fashion. If such permits and approvals are not reasonably and timely available with respect to the standards of the Metropolitan Builders Association of Greater Milwaukee, then builder may declare this contract null and void and return earnest money to the buyer less reimbursement for reasonable direct expenses of the builder.

Buyer shall be responsible for all taxes on property, including but not limited to any special assessments, bonding requirements, community (Town, Village, City, County or State) levies, and any other fees for parks, impact, fire, sewer/water hookup fees, etc. These amounts are not included in the items listed above unless specifically specified. The construction contract is for the building permit is only for the permit itself—not any

of these special assessments. If there is a curb deposit, the builder will be responsible for that, as long as no severe damage is done at occupancy the buyer will refund or reimburse the deposit to the builder. If there is a grading bond or deposit, the buyer will have this responsibility as the landscaping and finish yard work is outside of this contract.

## VALIDITY OF LOT OWNERSHIP

Where Buyer is the owner of the lot, Buyer shall furnish to the Builder within ten (10) days after acceptance of this Contract a copy of the recorded deed restrictions, easements, and covenants. The Buyer shall submit evidence of valid title relating to this lot to the Builder within fifteen (15) days prior to closing. Buyer shall be responsible for furnishing an approved site for construction called for by this Contract. The Buyer shall hold harmless and indemnify the Builder from any and all liability either to the Buyer or any other person or governmental body concerned if the Buyer fails to comply with the conditions of this paragraph.

## LIEN NOTICE:

**AS REQUIRED BY THE WISCONSIN CONSTRUCTION LIEN LAW, BUILDER HEREBY NOTIFIES BUYER THAT PERSONS OR COMPANIES FURNISHING LABOR OR MATERIALS FOR THE CONSTRUCTION ON BUYER'S LAND MAY HAVE LIEN RIGHTS ON BUYER'S LAND AND BUILDINGS IF NOT PAID. THOSE ENTITLED TO LIEN RIGHTS, IN ADDITION TO THE UNDERSIGNED BUILDER, ARE THOSE WHO CONTRACT DIRECTLY WITH THE BUYER OR THOSE WHO GIVE THE BUYER NOTICE WITHIN SIXTY (60) DAYS AFTER THEY FIRST FURNISH LABOR OR MATERIALS FOR THE CONSTRUCTION. ACCORDINGLY, BUYER WILL PROBABLY RECEIVE NOTICE FROM THOSE WHO FURNISH LABOR OR MATERIALS FOR THE CONSTRUCTION AND SHOULD GIVE A COPY OF EACH NOTICE RECEIVED TO HIS OR HER MORTGAGE LENDER, IF ANY. BUILDER AGREES TO COOPERATE WITH THE BUYER AND THE BUYER'S MORTGAGE LENDER, IF ANY, TO SEE THAT ALL POTENTIAL LIEN CLAIMANTS ARE DULY PAID.**

## CONSTRUCTION

Builder agrees to commence excavation of said building within Thirty (30) working days after the execution of this contract and the payment of the earnest money by Buyer **and** after all contingencies beyond the control of the Builder which may prevent commencement are cleared, including, but not limited to, financing closing, the down payment. escrow arrangements, building permits, change orders, plan revisions, or subcontractor agreements. The commencement date shall be the date upon which excavation commences. The Builder shall be the authority for the proper usage, arrangements, and placements of fixtures, equipment, and materials in accordance with recognized standards. Said building shall be completed in a good workmanlike manner in quality equal to the standards of the industry found in the Metropolitan Builders

Association Construction Industry Quality Standards manual within One Hundred Eighty (180) **working** days after date of commencement. The time for completion shall be extended in the event Builder shall be prevented from commencing or completing such building by reason of change or delays requested by the Buyer or public authorities or other acts of the Buyer, shortage of labor and materials, abnormal building site conditions, strikes, weather conditions, storms, lightening, hail, flood or similar occurrences, damages caused by riot, civil commotion, vandalism, theft, war, fire, or any other conditions or occurrences whether similar to the foregoing or not which are not within the control of the Builder, Builder may, at Builder's option, extend the projected completion date required under this section due to any change or delay that is not within the control of the Builder. Buyer is cautioned that delays by Buyer in making selections of materials or colors will extend the time for completion. In the event commencement or completion of the building is delayed by reason of any of the foregoing events occurring during the contract period and by reason of such delay the cost of labor and materials are increased over original contract price, the increased cost shall be charged to Buyer. Builder shall notify Buyer of such increased cost at the time the increase occurs and upon Buyer's request shall furnish the buyer with copies of invoices or other documentary evidence to verify such increased costs. Slight deviations from plans and specifications shall be construed as substantial compliance with this Contract.

### BUILDING SITE CONDITIONS

In the event abnormal building site conditions are encountered in conjunction with the foundation or installation of sewer and water laterals or septic system and well (which ever applies) Buyer agrees to pay the cost of any additional work or materials upon reasonable notice and the time for completion will be also be extended accordingly. This does not constitute a change in plans and specifications as detailed in the paragraph titled "Changes and Extras". Buyer agrees to pay for the additional costs caused by or resulting from site conditions, including, but not limited to, the following: abnormal soil conditions, removal of trees, excavation cave-in corrections, and any related costs. Any such extra costs shall be computed as set forth in the paragraph titled "Allowances". Unless otherwise provided in this Contract, the Buyer shall not be reimbursed for any excess ground removal from the site, nor shall the Builder be required to remove, store or replace topsoil or other surface objects. Builder will not be held responsible for unknown or unforeseen subsoil conditions that could affect the structure or laterals. Builder will not be held responsible for any damage to existing trees or their root systems at the job site. If there is a soil condition noticed at anytime, the builder will notify the Buyer to seek the developer for further action on the buyers agreement with the developer for build able lots under their agreement.

### WEATHER CONDITIONS

Buyer agrees to pay Builder all additional charges for additional work and materials which may be required due to weather conditions such as, but not limited to flooding, or any storm related damages, etc. Builder will maintain access to job site during winter

snow falls and any deliveries. If tarping or weatherizing the building is needed, the builder will be responsible for any work as well .

## SUPERVISION OF WORK

Buyer agrees that the direction and supervision of the working forces, including subcontractors, rest exclusively with the Builder, and Buyer agrees not to issue any instructions to, or otherwise interfere with same. Buyer shall not have direct contact with Builder's subcontractors without written permission from the Builder. Unauthorized communication with sub-contractors shall be deemed to be interference. Continued unauthorized contact shall be grounds for work stoppage Buyer default, entitling Builder to all its rights and remedies in that event. The Buyer shall at any reasonable time during working hours have the right to inspect the work, provided that this does not interfere with the progress of work. Builder shall not be responsible for any injury to Buyer during said inspections. The Buyer further agrees not to negotiate for additional work with the subcontractors or to engage other builders or subcontractors except with the Builder's prior consent and in such manner as will not interfere with the Builder's completion of work under this agreement. A breach by Buyer of any of the terms and conditions of this section may be treated as a delay that shall, at Builder's option, extend the time within which the building shall be completed as set forth in the paragraph titled "Construction" above. All items installed in the home prior to occupancy must be purchased through the Builder/Subcontractor unless otherwise authorized per paragraph titled "Work by Owner" above.

The parties agree that the terms and conditions of the Building Construction Contract dated March 6, 2016 shall remain in force and effect unless modified by Change Order or other means as set forth in said contract. All parties agree to pursue their respective rights and responsibilities in good faith, with mutual respect for the rights of the other, and agree to promote effective communication between all parties. Builder agrees, where possible, to promote the completion of the home as quickly as possible, in recognition of the special need of the Buyers to obtain occupancy as expeditiously as possible. The parties agree not to engage in any harassing behavior against the other concerning the move-in date.

The parties will primarily communicate by email or facsimile for the purpose of documenting any requests made therein. However, the parties understand and agree that there will be a need, from time to time, of in person or telephone communications. Any such communications will be undertaken by all parties diplomatically and professionally. The parties agree to avoid excessive meetings, repetitive questions and/or excessive phone calls. The parties agree that Builder and Buyer will participate in normal job visits (approximately once per week, sometimes once every two weeks). Further, walk-thru's will be done by Builder and Buyer upon the completion of each major phase of construction.

Buyers agree not to interfere with subcontractors and will only contact subcontractors

with the prior approval of the Builder. Further, Buyers agree to refrain from entering the construction site while the Builder or Builder's subcontractors are present performing work (unless prior approval has been obtained from Builder).

Draws and change orders will be administered in accordance with the terms and conditions of the contract. Parties agree to cooperate regarding draws and change orders and understand and agree that change orders that are not signed by the Buyers (and accompanied by any additional monies due, if applicable) may result in the change order not being performed.


## WORK STOPPAGE OR PAYMENT DEFAULT

Except as provided for in the paragraph title "Possession and Occupancy", if the work shall be stopped by the order of the Buyer, any court or other public authority, or if the Buyer fails to make payments as herein agreed, or other buyer breach Builder shall have the right to stop work or terminate this Contract and receive from the Buyer payment for all work performed and materials ordered or delivered, together with 20% Builder markup, plus builders lost profits. If Builder elects to stop work only, stoppage shall be considered a delay, as set forth in the paragraph titled "Construction".


## UTILITIES

Buyer agrees to promptly work with builder apply for and have water, gas, and electric meters installed in his name. Buyer agrees to pay for all utility and heating related costs during construction. Builder will include any charges to install electric and gas services, not actual usage. Prior to those installations, the builder will supply temporary electric and gas if needed. (generator for construction work)


## SIGNAGE AND MARKETING

Builder is authorized to show images of owner's home for builder's marketing purposes. Builder is also authorized to show home by walk thru's prior to occupancy, to other current or prospective customers for demonstration and illustration marketing purposes. Builder shall be responsible for the safety of any such current or prospective customers on premises and shall accompany any such persons at all times. Prior to occupancy, builder shall be entitled to display marketing tools, such as signage, noting Builder's involvement and contact information. Builder may also list home in MLS and market home to seek further contracts in part of the Model Home Discount. The period from this contract signing to 12 months after the home is started will be used for the model. Showings will take place with a builders qualified representative if the builder cannot attend. The owners will agree to keep the home in showing condition and tastefully decorated. Any pets will be secured. Owners will agree to allow builder to have 100% freedom to show home until Occupancy is granted. After that point, a 24 hour notice will be requested by builder to owners for any showings by appointment from the hours of 9am-7pm, this would be understood not to exceed 3 times per week. During the months

of February thru May and September thru November a supervised open house will be once a week, most likely on Sundays from the hours of 12pm-4pm. Any other showing requests would have to be approved by both parties.

## POSSESSION AND OCCUPANCY

Builder shall have the exclusive possession and control of the real estate from the time work is commenced until all sums due Builder under the Contract have been paid in full. If Buyer should occupy the real estate prior to such payment, the Buyer will be deemed to have accepted all work done prior to occupancy, and Builder may, at its option, either terminate this Contract or suspend performance of the work until Buyer vacates the real estate. If Builder terminates, then Builder will do no further work and Buyer shall immediately pay to Builder the entire contract price, including extras and change orders, less amounts previously paid. If Builder suspends performance, than (A) the contract time for performance by Builder shall be extended by the amount of time Buyer's occupancy plus 7 days for Builder to reschedule workers and materials, (B) Buyer will immediately pay all sums due Builder for work done to date with profit, and (C) Buyer shall pay to Builder the sum of $100.00 per day for each day Buyer occupies the real estate as Builder's liquidated damages for suspending work and extending the time for performance. Builder will give notice in writing to Buyer of its election to terminate this Contract within fourteen (14) days of occupancy. In the absence of any notice, Builder will have elected to suspend performance as above. **Buyer is responsible for payment in full, including extras and change orders, prior to occupancy.**

## WARRANTY

The home constructed pursuant to this agreement shall be warranted by Builder to comply with the Metropolitan Builders Association Construction Industry Quality Standards for residential homes for a period of one year from completion or occupancy of the home, whichever comes first. 'Completion date" shall mean the date on which occupancy permit is granted by the municipality. There shall be no money withheld on the final payout of this contract for items covered by the Builder's warranty. All warranties shall be void if full payment according to the contract is not made. Any moneys withheld by the title company (or other escrow agent) on the final draw must be paid to Builder before occupancy. Builder must be notified in writing of any items covered by the warranty before the end of the one-year warranty period. If Builder does not receive written notice of warranty items within the one-year warranty period, Builder shall not be obligated to perform warranty work for any such items. Builder makes no express or implied warranty of habitability, fitness for use or merchantability, as to the residence, any building materials, services and/or construction methods, except as otherwise provided herein. Buyer understands and agrees that the sole remedy under this warranty agreement is repair by the Builder as set forth herein, unless otherwise determined by the arbitrators. Buyer hereby waives all contract remedies that are not enumerated in this agreement. Builder shall not warranty any work performed by Buyer or by subcontractors retained by the Buyer. Work performed by the Buyer or Buyer's

subcontractor may void any warranty identified herein. This warranty is not transferable to a new owner within the warranty period.

## DISPUTES

Should any dispute arise relative to the performance of this contract or arising out of the performance pursuant to this contract including, but not limited to, any disputes regarding charges for extras, the parties agree that such disputes will be resolved by arbitration. The disputes that are subject to arbitration shall include any action or claim by Buyer against the officers, directors, employees, agents or assigns of the Builder in their individual capacities. The arbitration shall be conducted by the Construction Arbitration Board of the Metropolitan Builders Association of Greater Milwaukee in accordance with the rules adopted by said arbitration board. The decision of the arbitrators shall be binding and final and may be enforced in accordance with the applicable provisions of Chapter 788 of the Wisconsin Statues. If Buyer files a claim in court rather proceeding with the alternative dispute resolution process of this contract, and fails to dismiss it within five (5) business days as requested by builder, then builder shall be entitled to reimbursement for its costs, including attorney fees, for enforcing the alternate dispute resolution provisions of this contract.

The filing of a lien claim shall not be considered an election by the Builder to waive its rights under this provision and the enforcement by the Builder of its lien rights is expressly accepted from the requirements of this provision. In the event of any breach of this agreement by Buyer, Buyer shall reimburse Builder for all costs and reasonable attorney fees incurred in enforcing any provision of this agreement. In the event that either party requests, in writing, that a dispute be resolved by mediation, the other party to this contract must proceed to mediate the dispute(s). In the event mediation is requested, the mediation shall be conducted by the Mediation Service of the Metropolitan Builders Association of Greater Milwaukee, Inc. in accordance with its rules and procedures. Disputes that are subject to mandatory mediation include contractual disputes and disputes directly relating to the construction or to the supplying of services and/or materials for the construction. The parties agree, in the event the dispute proceeds to mediation, that they will make a good faith effort to resolve their disputes(s) through the mediation process and that they will abide by the MBA Mediation Service policies and procedures. Proceeding to mediation does not waive or affect the obligation of the parties to resolve their dispute(s) by arbitration in the event mediation is not successful.

## MOISTURE, MOLD, AND INDOOR AIR QUALITY

**WARNING:** Microorganisms, including, but not limited to, mold, mildew, spores, or any other form of fungi or bacteria ("microorganisms"), occur naturally in the environment and may be present, during or after construction, in the indoor air and/or on the interior surfaces of the building including, without limitation to, wall cavities, attics, windows, basements, and/or on the exterior surfaces of the building, or any part thereof. Concentration of moisture in the building may result from cooking, showering, or similar

activities inside the building, the outside atmosphere, and/or the design, construction means and methods, and/or the building materials used in the construction of the building. This moisture may cause the growth, release, discharge, dispersal, or presence of microorganisms which, at certain levels, can cause deterioration of building materials, damage to property, health hazards, personal injuries and/or other irritant effects such as, without limitation to, skin irritation, respiratory problems, and/or allergic reactions. Likewise, concentrations of radon released from soil or chemicals released from household furnishings, appliances, mechanical equipment, personal possessions, or building materials may, at certain levels, create health hazards and/or other irritant effects such as, without limitation to, skin irritation, respiratory problems, and allergic reactions. Because microorganisms and radon

**Moisture, Mold, and Indoor Air Quality (continued)**

occur naturally in the environment, Builder cannot eliminate the possibility that radon may be present or that microorganisms may grow in, on, or about the building. Buyer may minimize these effects by proper utilization and maintenance of heating, cooling, dehumidification, or ventilation equipment, interior maintenance and cleaning, and exterior maintenance such as, but not limited to, proper grading, landscaping, painting, and caulking. **BUYER ACKNOWLEDGES THAT BUYER HAS BEEN INFORMED OF SUCH EFFECTS AND BUYER ASSUMES ALL RISKS OF DAMAGE, PERSONAL INJURY, OR DESTRUCTION OF OR INJURY TO PROPERTY THAT MAY ARISE AS A RESULT OF OR IN ANY WAY CONNECTED WITH THE INDOOR AIR QUALITY OR THE PRESENCE OF MICROORGANISMS, RADON, OR CHEMICALS IN, ON, OR ABOUT THE BUILDING.**

**NOTWITHSTANDING ANY OTHER CONTRARY PROVISION IN THE CONTRACT, BUYER FULLY, FINALLY, AND FOREVER RELEASES AND DISCHARGES, AND FURTHER AGREES TO INDEMNIFY AND DEFEND, BUILDER, ITS SUCCESSORS AND ASSIGNS, SUBCONTRACTORS, MATERIAL SUPPLIERS AND THE OFFICERS, EMPLOYEES, AGENTS OF EACH OF THEM, FROM AND AGAINST ANY AND ALL CLAIMS, OBLIGATIONS, DEMANDS, DAMAGES, CAUSES OF ACTION, LIABILITIES, LOSSES, AND EXPENSES, INCLUDING REASONABLE ATTORNEYS' AND EXPERT FEES, WHETHER NOW KNOWN OR HEREAFTER KNOWN, FORESEEN OR UNFORESEEN, THAT BUYER OR ANY OCCUPANT OF THE BUILDING HAD, HAS, OR MAY HAVE IN THE FUTURE, IN LAW OR IN EQUITY (THE "CLAIM") THAT ARE ATTRIBUTABLE TO (1) BODILY INJURY, SICKNESS, EMOTIONAL DISTRESS, DISEASE, DEATH, OR ANY OTHER PERSONAL INJURY OR ADVERSE HEALTH EFFECTS, OR (2) INJURY TO OR DESTRUCTION OF TANGIBLE PERSONAL PROPERTY, INCLUDING LOSS OF USE THEREOF, ARISING OUT OF, RELATING TO, OR IN ANY WAY CONNECTED WITH, INDOOR AIR QUALITY, MOISTURE, OR THE GROWTH, RELEASE, DISCHARGE, DISPERSAL, OR PRESENCE OF ANY MICROORGANISMS, RADON, OR ANY CHEMICAL OR TOXIN SECRETED THEREFROM, IN THE INDOOR AIR, ON THE INTERIOR**

SURFACES OF THE BUILDING INCLUDING, WITHOUT LIMITATION TO, WALL CAVITIES, THE ATTIC, WINDOWS, AND THE BASEMENT, OR ON THE EXTERIOR SURFACES OF THE BUILDING, OR ON ANY PART THEREOF, WHETHER OR NOT THE CLAIM IS CAUSED BY, IN WHOLE OR IN PART, BUILDER'S BREACH OF THE CONTRACT OR ANY ACT OR OMISSION OF BUILDER, ITS SUBCONTRACTORS, OR MATERIAL SUPPLIERS, IN THEIR PERFORMANCE UNDER THE CONTRACT, INCLUDING, BUT NOT LIMITED TO, BUILDER'S, OR IT SUBCONTRACTORS' OR MATERIAL SUPPLIERS', CONSTRUCTION MEANS AND METHODS, MATERIAL SELECTION AND INSTALLATION, AND/OR DESIGN SERVICES, IF ANY. BUILDER MAKES NO EXPRESS OR IMPLIED WARRANTY OF HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR GOOD WORKMANSHIP AS TO BUILDING MATERIALS AND/OR CONSTRUCTION MEANS AND METHODS WITH REGARD TO INDOOR AIR QUALITY OR THE PRESENCE OF MICROORGANISMS, RADON, OR CHEMICALS INCLUDING, WITHOUT LIMITATION TO, ANY CHEMICAL OR TOXIN SECRETED THEREFROM IN, ON, OR ABOUT THE BUILDING.

## NOTICE OF CONSTRUCTION DEFECTS AND BUILDER'S RIGHT TO REPAIR

Builder warrants that the building has been constructed in a good and workmanlike manner and within the standards of the industry set forth in the Construction Industry Quality Standards compiled by the Metropolitan Builders Association. In the event of an alleged construction or design defect arising out of or relating to the Contract, including, but not limited to, breach of warranty, incomplete work, or any other condition of the building (the "Defect"), Buyer shall notify Builder through written notice, via certified or registered mail, return receipt requested, of any such Defect, regardless of the cause or source, within seven (7) days of Buyer's discovery of the Defect. Buyer shall promptly thereafter provide Builder with reasonable access to the building for the purpose of investigating, testing, and examining the Defect. If the Defect is reasonably determined to be a matter for which the Builder is responsible under the Contract, then Builder shall be given reasonable access to the building and a reasonable amount of time to, at Builder's sole option, replace or repair the Defect. The replacement or repair of the Defect shall be Buyer's sole and exclusive remedy for a Defect. Buyer waives any and all incidental and consequential damages arising out of or relating to a Defect. Any corrections or repairs undertaken by Builder shall be in compliance with the industry standards referenced above.

Notwithstanding anything to the contrary in the Contract, Builder shall not be obligated to replace or repair any Defect or pay for the replacement or repair of the same if such Defect is caused, in whole or in part by: 1. Buyer's improper or insufficient maintenance of the building, or improper or insufficient maintenance or operation of any of the building's systems; 2. Natural occurrences beyond Builder's control; 3. An act or

omission of Buyer or any third parties not under Builder's control, including, but not limited to, work performed by the Buyer or by Buyer's subcontractors; or 4. Normal wear and tear and normal usage.

## SAFE DRINKING WATER ACT
Unless otherwise expressly provided in writing, Builder does not warrant or guarantee compliance with the provisions of the Safe Drinking Water Act or similar laws or ordinances relating to drinking water. Compliance with any such law is Buyer's responsibility.

## SPECIAL CONDITIONS
*In the event of a conflict between the Plans attached as Exhibit "B" and the Builder's Specification attached as Exhibit "C", the Builder's Specification shall govern.*

## ENFORCEABILITY
If any part of this Contract is found to be unenforceable, it shall not affect the enforceability of the remainder of this Contract.

## COPYRIGHT NOTICE
Buyer represents and warrants to the Builder that ANY plans, specifications, drawings and/or blueprints submitted to Builder by Buyer for use in construction of the residence that is the subject of this Contract are either owned by the Buyer or have been properly obtained by the Buyer for use by the Builder. Buyer agrees to indemnify, defend, and hold harmless the Builder, its officers, owners and employees from and against any and all claims, debts, obligations, costs, expenses and reasonable attorney fees arising out of or in any way related to any Third-Party claims relating to said materials or their use, including, but not limited to; copyright infringement, unfair competition and unjust enrichment.

## MATERIALS/EQUIPMENT
Buyer is aware that any materials, lumber, drywall, etc. and/or equipment brought to or left on the job site are the Property of the Builder/Subcontractor/Material Supplier and are not to be considered property of the buyer.

## SIGNATURES
The signature of either Buyer (if more than one) shall be sufficient for all purposes under the contract, including change orders or Contract Addendum executed, if any.

**FINAL AGREEMENT**
This agreement expressed all agreements between the parties concerning the subject matter hereof and supersedes all previous understandings relating thereto, whether oral or written, including proposals, draft plans and specifications, brochures and other information, and shall be binding upon and shall inure to the benefit of the heirs, administrators, executors, successors and assignees of the parties hereto. This agreement, the rights and obligations hereunder, may not be assigned by either party without the express written agreement of all parties to this agreement. This agreement and any interpretation of this agreement, shall be governed by the laws of the State of Wisconsin.

WE HAVE READ THIS CONTRACT CAREFULLY BEFORE SIGNING IT and hereby acknowledge receipt of a copy thereof.

**ACCEPTANCES**
Accepted this 6th day of March, 2016

_____

**Built by Ted, LLC**
**Ted Polczynski, President**

_____

**Vlad Malevany**

_____

**Amy Malevany**

**EARNEST MONEY RECEIPT**
Received by buyers, $15,000.00 to date 3/7/2015.

_____

Name and Title: _____


**Handyman Ted**
**Custom Building & Remodeling Company**
6917 Hwy 83, Hartland, WI 53029
Phone 262-221-8386 ~ Fax 920-455-7646

April 13, 2016

Amy and Vlad Malevany
Lot 9
Woodhaven Meadows Subdivision

## Tree removal

-Remove all trees in the building pad house location includes 15-20' from foundation wall.

-Includes burying the larger stumps in the lot out of any utility areas.

-Removing the thin brush in the area as well.

-Chipping the brush and scattering on lot.

$3,800.00

Please call if you have any questions.

Sincerely,

Ted Polczynski

## Acceptance of Proposal.

- The above prices, specifications, and conditions are satisfactory and are hereby accepted. You are authorized to do the work as specified.

- **Payment** to be made as follows: In full upon agreement. Accounts over 30 days will be charged 1-1/2% per month interest (18% per annum).

- **Start/Completion date:** Approximate commencement date: April 17, 2016. Approximate completion date: May 10, 2016 , however, change orders, weather conditions, or unforeseeable circumstances may

1

delay or otherwise affect the start and completion date.

- **Access:** Customer must provide full and complete access to work site from 7AM to 7PM.

- **Insurance:** Handyman Ted shall purchase and maintain Worker Compensation and Liability coverage as covered by law. Customer will purchase and maintain all other insurance it deems necessary or advisable, including property insurance.

- **Permits:** Except for permits and fees which are the responsibility of owner. Pursuant to this contract, the Customer shall secure and pay for all necessary permits, approvals, easements, assessments, and charges required for the construction, use, or occupancy of structures or changes in existing facilities.

- **Changes in the Work:** Except as provided elsewhere in this agreement, no change to this contract shall be made without mutual agreement and a written change order signed by company and owner identifying change, the cost of change, and the effect on Project schedule, if any.

- **Right to Cure:** Attached is a brochure required by Wisconsin statutes 101.148 Please read it over to know your rights. If you have any questions, please contact company to explain the law.

- **Litigation, etc.:** In the event of any arbitration or litigation relating to the project or this contract, Handyman Ted shall be entitled to reasonable attorney fees, costs, and expenses. If Handyman Ted is required to pursue legal remedies to collect payments owed it under this contract, Handyman Ted. shall be entitled to receive its collection costs and expenses, including but not limited to reasonable attorneys' fees.

- **Notice to Consumers:** Customer's Right to Cancel: You may cancel this agreement by mailing a written notice to Ted Polczynski, 6917 Hwy 83, Hartland WI 53029 midnight of the 3rd business day after you signed this agreement. If you wish, you may use this page as that notice by writing: "I hereby cancel" and adding your name and address.

- Handyman Ted makes no warranties, express or implied, other than the warranty provided in this contract.

- Proposal can only be accepted within 15 days of date of proposal.

- All agreements for additional work beyond the scope of this proposal will become an extra charge above the proposal amount and subject to the same terms.

Authorized
Signature: _____ Date: _____

As required by the Wisconsin Construction Lien Law, contractor hereby notifies customer that persons or companies furnishing labor or material with regard to the work described in this proposal may have lien rights on customer's land and building if not paid. Those entitled to lien rights in addition to the undersigned contractor, are those who contract directly with the customer or those who give the customer notice within 60 days after they first furnish labor or materials with regard to the work described in this proposal. Accordingly, customer may receive notices from those who furnish labor or materials for the work and should give a copy of each notice received to the mortgage lender, if any. Contractor agrees to cooperate with the customer and the customer's lender, if any, to see that all potential lien claimants are duly paid.

2

# EDGEWOOD SURVEYING

14195 BEECHWOOD TRAIL • NEW BERLIN • WISCONSIN 53151
(262)368-5749 • fax (262)797-6329

## PLAT OF SURVEY

PREPARED FOR: IDEAL HOMES/MALEVANY

LOCATION: WOODHAVEN EAST, TOWN OF SALEM

LEGAL DESCRIPTION: LOT 9, WOODHAVEN MEADOWS, IN NE 1/4, SE 1/4, SW 1/4 & NW 1/4 OF SE 1/4 OF SECTION 13, & IN NE 1/4, SE 1/4 & NW 1/4 OF NE 1/4 OF SECTION 24, TOWN 1 NORTH, RANGE 20 EAST, IN THE TOWN OF SALEM, KENOSHA COUNTY, WISCONSIN.

MAY 11, 2015

KEN-1006



BEARINGS REFER TO THE PLAT OF WOODHAVEN MEADOWS

LOT SIZE=37,086 S.F.

PROPOSED YARD GRADE PER APPROVED GRADING PLAN=856.0

SCALE: 1"=40'



S 87°40'45" E  234.47'

N 12°40'40" W  220.00'

S 17°01'11" W  220.00'

PROPOSED DWELLING

GARAGE

121.99'

## WOODHAVEN EAST
### (66')

I hereby certify that I have surveyed the above described property and the above map is a true representation thereof and shows the size and location of the property, its exterior boundaries, the location of all visible structures and dimensions of all principal buildings thereon, boundary fences, apparent easements, roadway and visible encroachments, if any. This survey is made for the present owners of the property, and also those who purchase, mortgage, or guarantee the title thereto within one (1) year from date hereof.

Signed _____

CHRISTOPHER J KUNKEL  REGISTERED LAND SURVEYOR S-1755